# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAURA L. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-395-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Laura L. Hill requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the decision of the Commissioner must be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 23, 1977, and was thirty-two years old at the time of the administrative hearing (Tr. 83). She has a twelfth grade education and has worked as an inspector in a clothing unit (Tr. 43). The claimant alleges that she has been unable to work since August 1, 2001 due to a dislocated collarbone, pain in her hips, and depression (Tr. 108).

## Procedural History

On October 31, 2007, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Ralph Wampler conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated June 4, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work, *i. e.*, she could lift/carry up to 10 pounds occasionally, sit for up to six hours and stand/walk for up to two hours with normal breaks, but could stoop only occasionally and should avoid temperature extremes, humidity, and chemical fumes (Tr. 41). The ALJ concluded

that although claimant was unable to perform her past work, she was nevertheless not disabled according to "the grids," *i. e.*, the Medical Vocational Guidelines, Rule 201.27.

**Review**

The claimant contends that the ALJ erred by conclusively applying the grids at step five to determine that she was not disabled. She argues that the failure to properly evaluate her credibility regarding pain at step four precluded the ALJ applying the grids conclusively to determine she was disabled at step five. *See Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) ("[A]n ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level."). Because the ALJ did fail to properly evaluate the claimant's credibility at step four, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis.

The medical evidence reveals that the claimant presented to the Pain Management Center on March 26, 2003 with complaints of lower back pain which was radiating into her left leg (Tr. 171). At that time, the claimant was preparing to undergo surgery on her lumbar spine which was injured in August 2002 when one of her children ran over her while she was working underneath her car (Tr. 171). The operating notes from her March 28, 2003 surgery reveal that claimant's preoperative and postoperative diagnoses included acquired spondylolositheses at L5-S1 and left L5 radiculopathy (Tr. 179). She had a number of procedures done to assist with her condition, including an L5

-4-

laminectomy, discectomy, facetectomy, and foraminotomy; L4 laminectomy; posterior lumbar interbody fusion at L5-S1; and an intertransverse arthrodesis at L4-S1. In addition, the claimant had a Brantigan cage placed at L5-S1.

The claimant began seeing Dr. Dayne Piercefield at the Wewoka PHS Indian Health Center in June 2008. She reported at her initial visit that her back pain had begun radiating down her left arm and leg, causing weakness and numbness in her left arm (Tr. 220). Dr. Piercefield noted "[t]ender points and areas of obvious muscle spasm across [the] shoulder girdle and low back," stiff hips and shoulders, and limited range of motion due to pain and muscle spasms, and prescribed baclofen, dexamethasone, and tramadol for pain (Tr. 221-2). In July 2008, the claimant presented with the same complaints of pain, and cyclobenzaprine, gabapentin, meloxicam, and propoxyphene were added to the claimant's prescriptions in an attempt to better manage her pain (Tr. 232-33).

Dr. Piercefield referred claimant for physical therapy at Carl Albert Indian Health Facility in July 2008, and she was seen by physical therapist Britt Johnson. Johnson noted that claimant's pain was an 8 out of 10 on the pain scale with mild forward flexion and that claimant "had a severe restriction in forward flexion in a standing position, as well as a severe restriction to extension in a standing position" (Tr. 258). Further, Johnson noted that claimant had a "severe bilateral rotation restriction", that her left hip seemed to be rotated more posteriorly as compared to the right, and that she stands with all of her weight on her left lower extremity (Tr. 258). After attending several physical therapy sessions, the claimant was again treated by Dr. Piercefield, who noted that

claimant still had "debilitating back pain" and opined that she may have cord nerve root impingement in her back (Tr. 262).

The claimant testified at the administrative hearing that she experiences constant pain in her lower back that continues into her right hip and causes numbness in her left hip (Tr. 19), muscle spasms in her left hamstring every night at bedtime, and numbness from her left shoulder to her fingertips twice a week (Tr. 20). The claimant testified that she had been receiving physical therapy, a lack of transportation prevented her from continuing her therapy, and that she planned to resume physical therapy when she obtained transportation (Tr. 22). She testified that the medications she takes for pain cause her to sleep when she takes full doses (Tr. 23). The claimant also testified that she estimated that she could sit for 30 minutes continuously, stand 10-15 minutes, and walk about two blocks (Tr. 25-26). She also stated that her oldest daughter helps her shower and get dressed, her husband does most of the cooking, and she has to lie down off and on throughout the day to alleviate her back pain (Tr. 30).

The claimant was examined by one state examining physician and her medical records were reviewed by two state reviewing physicians. First, the claimant was examined by state examiner Dr. Shahnawaz A. Khan of the Disability Determination Division on December 12, 2007 (Tr. 190). Dr. Khan reported that the claimant had no problems mounting and dismounting the exam table, but also noted that the claimant had reduced range of motion, most notably in back flexion, hip flexion, and hip rotation (Tr. 193). The claimant reported pain in attempting to flex, extend and bend her lower back,

and Dr. Khan noted tenderness and muscle spasms in both the lumbosacral spine and cervical spine (Tr. 196). In January 2008, state reviewing physician Dr. Judy Marks-Snelling opined that claimant was capable of occasionally lifting 50 pounds, frequently lifting 25 pounds, standing and sitting, respectively, for six hours each within an eight hour workday, with only occasional stooping (Tr. 212-13). Finally, in July 2008, state reviewing physician Dr. Luther Woodcock's notations essentially matched Dr. Snelling's, with the exception that Dr. Woodcock opined that claimant was only capable of lifting 20 pounds occasionally and 10 pounds frequently.

Although the ALJ made his decision at step five, *i.e.*, by conclusive application of the grids,[2] the claimant argues that the ALJ's fatal error was made at step four in his assessment of claimant's credibility with regard to the impact of pain on her RFC. It is well established that deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. But it is also well established that the ALJ's credibility findings must be closely and affirmatively linked to the evidence and may not be just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may

---

[2] The grids are composed of a table of rules that direct a determination of disability based on a claimant's RFC category, age, education, and work experience. *Channel v. Heckler*, 747 F.2d 577, 579-80 (10th Cir. 1984). "[A]n ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4. It is clear that the ALJ's determination as to the claimant's credibility failed to meet these standards.

In addressing the claimant's credibility, the ALJ first set out, through essentially boilerplate language, that he had given consideration to the claimant's symptoms in accordance with the objective medical evidence, opinion evidence and a host of social security regulations and rulings, including, *inter alia*, 20 C.F.R. § 416.929, SSR 96-7p, and SSR 96-6p. The ALJ then summarized the claimant's testimony and concluded that while the "claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 42). The ALJ concluded that limiting the claimant's RFC to sedentary work with stooping and environmental limitations "takes into full account limitations caused by pain." Thus, the ALJ noted the relevant law, summarized testimony, and reached a conclusion; he did not, however, link any of the relevant credibility factors to specific evidence. *See Kepler*, 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible."). *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to

address and did not link his conclusions to the evidence[.]"). It is unclear, in fact, *what* evidence the ALJ relied upon in finding that claimant's allegations of pain were not credible. It is precisely the failure of the ALJ to link his credibility findings to *any* evidence at step four that warrants remand. *See Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004) (noting that when the ALJ does not properly evaluate the claimant's impairments at step four, it is error for him to apply the grids at step five).

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. If such analysis results in changes to the claimant's RFC, the ALJ should re-determine what the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings as set forth above.

**DATED** this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma